Good morning, Your Honors. My name is Anna Bangiyeva, and I represent Ilana Bangiyeva in this matter. Ilana is a third-party petitioner who is seeking to adjudicate her ownership interest in six specific properties. Because I recognize that the court's time is valuable, I will jump right into the issues that Ilana believes are vital to her petition. By way of background, Ilana is the sister of two of the defendants in the criminal case. However, it should be noted that Ilana is an innocent party. She has never been arrested, convicted, or even alleged to be part of any of the criminal activities of her brothers. The record, in fact, is clear that she was not even aware of any wrongdoings by her brothers. The well-established standard in the ancillary proceeding is by preponderance of evidence. However, it is clear that the court held her to a much higher standard. The court treated her application as if she were a defendant in this case, not an innocent third party. For instance, on five out of six properties, the district court stated justification that the property being forfeited as they were purchased with the proceeds of the crime or as substitute assets. It is well established that substitute assets, as well as proceeds of the crime, apply only to the defendants. Again, she is an innocent third party. The court properly stated in its order that the ownership is a complete defense to forfeiture. However, it is clear that the court's final findings failed to apply this standard for each and every one of the six properties for which Ilana petitioned. And for all six properties, the district court acknowledged that Ilana was a title holder on lawful deeds issued under New District Code. Even if she has a title interest by deed, forfeiture looks at where did that interest come from because otherwise anybody could be on a deed and that is simply a subterfuge, particularly when you have family members and friends involved, to avoid forfeiture by the de facto owners, which in this case I guess would be her brothers. Where did the money come from? And I think for most of these parcels, her interests accrued during the time of the conspiracy and she was unable to show that she had other assets that could have effectuated the purchase of an interest. So in that circumstance, what entitles her to prevail? Your Honor, the standard is, you're right, you have to prove that you exercise dominion and control over the properties. And in this case... This is one of my fundamental confusions. I don't think that's the standard. I thought you acquired an interest in the property before the property became forfeitable or two, that you were a bona fide purchaser for value. Now, I don't see really any plausible argument that your client was a bona fide purchaser for value. So it strikes me the only argument you really have is the first one. This is why I'm very confused. This is a genuine expression of confusion. I don't understand what the relevance of the HELOC is here because it seems to me that either she acquired an interest before the property became forfeitable, in which case she's or she didn't, in which case none of this stuff about the HELOC matters. Could you explain to me why the HELOC matters? Absolutely. As a third party petitioner, yes, she has to establish that she had pre-existing interest or she's a bona fide purchaser. In this case, she did establish that. I'm going to give you the example. Sorry, you said that. Which of the two did she establish? She established certainly that she's a bona fide purchaser and she established that she's a bona fide purchaser of something you already own. Okay, let me give you the example of one of the properties, how the court issued the decision. The property is 102-265th Road. In that property, the court acknowledged that the down payment, the total down payment was $463,000. And the majority of the down payment, which is $375,000, or if you calculate, it's 81% of the equity proceeds used to purchase this property, came directly from Ilana's bank account in the form of two checks. The court acknowledged the legitimacy of $235,000 out of this. This is the one where she wants the extra $140,000? Yes, this is the one. But let me explain. Even the decision itself already, so the court acknowledged the contribution legitimacy of $235,000, and yet in final decision said that none of the petitions exercised that they have a valid claim and therefore their petitions denied and the government should be forfeited to the government. So along the $235,000... So if the government sells that particular property, she gets $235,000 out of it. That's what inexplicably the court stated. But that... Is that statement correct? She'll get the $235,000 if they have a sale? Well, the decision... First of all, the $235,000, she's already a majority owner, 51%. So there should be no sale. The property should not be forfeited to the government. But the court, in memorandum opinion, acknowledged that contribution. He didn't say specifically the government should return $235,000. He kind of suggested and the government doesn't object to that. But this, of course, ignores the 14 years of price appreciation in the property associated with the current market value, to begin with. And also, he denied her other portion, which is $140,000, based on the evidence that he said, and I'm going to explain for the HELOCs, because it all relates. He stated that by denying the second portion, that there is no credible evidence that gold was ever purchased as an investment or that it increased in value over time. That's the court's ruling. However, it should be noted that, and now I'm going to explain with the HELOCs, it is undisputed and it is on the record that Ilana procured two home equity lines of credit from the other property, 110-3769 Avenue. It was back in 2005. And the totaling, the amount of the HELOCs was $750,000. So Ilana invested that HELOCs, which the government doesn't dispute, it's on the record, it's legitimate funds from the legitimate source, from the bank. So she invested that money into the gold. And Ilana provided... He didn't believe any of that in terms of... He didn't believe, but the record is clear. She provided at least 69 pages of gold receipts. She provided the... Purchase of gold, they could have been for any types of transactions. There are exactly two wire... She provided even the proof with two wire transfer. There are... Immediately after the HELOCs were obtained for the amount totaling, one was for $200,000 and another one for $250,000. Immediately after HELOCs were obtained, two wire transfer to the gold trading companies. It's all on the record. It was immediately, like one month literally after the HELOCs were obtained. And then she provided 69 pages of the gold receipts. And the court said there is no credible evidence. Furthermore, the court stated that there is no... There is no credible evidence that the gold was ever purchased as an investment or that it increased in value over time. For that being said, gold is one of the most tracked commodities in the world. And the fact... Isn't the role that the gold played in all of this a... Subject to a clear era standard. You're saying, well, we have a legitimate or superior interest. And we've been able to do that, establish that through these gold investments. And yet when you look at the evidence that the district court cited, you know, there were no... No purchase receipts, no account statements, no income tax return. That the gold investments is a source of legitimate assets. It's all fabricated. It's fictitious. That's what the court asserts. But however, it's not. So Ilana established the... She provided again the standards by preponderance of the evidence. The money came from her account. But this is subject to a clearly... It's a subject to... That part of the appeal is subject to a clear era standard. The other probably has some of that too, because there's no evidence that this was held as a joint tenancy. It's a tenancy in common. And, you know, when it... I find it very troubling that while on supervised release, Edward is living in a home whose viability is financed by money from the counterfeiting conspiracy. It's odd to me that someone is a member of a conspiracy, convicted of that, and then in partial service of the sentence, in this case, supervised release, is living in the home that the very conspiracy, the counterfeiting, has made viable, either through payment of taxes or repairs or mortgages or whatever. It's like he's profiting handsomely from this. Why should he be able to live in that? Why should anybody be able to live in that house that is financed by counterfeiting? You've got the... As Judge Agee pointed out, you've got the one-third interest. And the question of equity is whether that interest can be satisfied if there's a sale. And you can sell a property and take the proceeds and distribute one-third of it to her, and that will satisfy the interest. That's the equitable dimension to this. I believe, Your Honor, you are referring to the other property, which I have not mentioned yet. It's 110-3769 Avenue. And it should be noted that the defendant's interest was, in fact... This is the property. I'm going to pronounce this wrongly. Alaysia Yeva? Correct. So the three-title, four-title owners on the property. And the property, the interest of defendants has been forfeited, in fact. So now we are disputing here, I represent Ilana, and her one-third interest. The government hasn't contested, as it did in some other cases, that her interest, her one-third interest, they haven't attempted to divide that up. They did in some other cases. So she gets the whole third. So they don't contest that. The issue is, since she's a tenant in common with the other tenants of the property whose interests have been forfeited, the district court not only recognized her one-third interest, it gave her a life estate. So I think the issue is, what authority does the district court have to go beyond her interest in the property? Your Honor, now we're talking about the government's cross-appeal as to Irina Alaysia Yeva's one-third portion. However, I would like to state here why Ilana is entitled to her one-third in this property. Take it up on rebuttal if you want, but you do what you want. Yes. So basically, why Ilana is entitled to one-third in this property? Because the reasoning why the court denied her interest, because the court stated in its order that $662,000 settlement fee to the government to avoid the seizure of 69th Avenue property came from proceeds of the crime and not from Ilana's income from other sources. She is therefore not entitled to one-third interest as a pre-existing owner. First of all, it should be noted this property was purchased 2003, 20 years ago, which predates the conspiracy itself. And when court in its decision referenced the settlement agreement, it was unrelated settlement agreement. And the court's decision for justification for denial of Ilana's one-third interest was based on the factual misinterpretations of the facts by the government. So they used basically that the government, the court, they used the settlement agreement which took place in 2011, seven years after Ilana established her ownership in this property. And namely, what the government, how they misinterpreted the facts, and the court repeated in its decision. All right. Thank you, counsel. Thank you very much. And your time has expired, but you also have some, if my co-panelists have questions, that's fine. Otherwise, I'll ask you to reserve your remaining argument for the rebuttal time that you've set forth. Okay? Thank you, Your Honor. All right. Let's see. Is this Mr. Mickelson? Is that you? It is, Your Honor. Okay. Good morning. May it please the court. Aidan Rono-Mickelson on behalf of the United States. Addressing the issue of the ownership of the properties first, I think the standard of review and the burden of proof here heavily weigh in favor of affirming the district court's order as to the factual findings. The standard is that, of course, that Ms. Bengeyeva has to approve her ownership interest by preponderance of the evidence, and that is subject to clear error review on this court. In a case in which there is no documentary evidence supporting the narrative that gold was purchased and then increased in value and then cashed in to pay off mortgages on four of the five real properties in this case, the district court cannot have committed clear error by concluding that Ms. Bengeyeva had not met her burden of proof with respect to those properties. May I ask you about the only property I have any questions about, which is the 16th Avenue property? When did that become forfeitable in the government's view? It became forfeitable at the time that it was used as a source of influence over the Rico conspiracy. And that is when? So the earliest evidence that we have is March 2006, when delivery of a magnesium etching machine for counterfeiting was delivered to that property by one of the co-conspirators. Okay, but at that point, the petitioner, whatever we'll call the appellant, at that point, the appellant already owned, had an ownership stake. So that, why isn't she covered by AVEN? Because the appellant's ownership stake was at that point only a nominal interest. It was a straw, essentially, ownership on behalf of the defendants. So this court has said in United States v. Morgan and Inree Bryson that mere title ownership as a matter of state property is not sufficient to show the interest that the forfeiture statutes require. And it's a straw or nominal because she was added as a one-third owner for $10 or something? Exactly, Your Honor. And she didn't exercise adequate dominion or control over the property between the time that she was added and the beginning that it was triggered, the time that it was then used as a source of influence over the Rico property. In addition, the vast majority of contributions that she claimed to the property as part of her true ownership, again, came from this narrative of gold proceeds that were then cashed in, which the district court discredited as a matter of fact. So it was nominal as to the beginning. Wasn't any documentary evidence of your pen insurance bills, I paid real estate taxes, nothing like that to document a contribution? Ms. Bengayava submitted a series of checks issued in 2004 that were contributions to things like construction loans in a variety of several thousand dollars, and I believe checks that related to utility bills like water and electricity. But the district court did not credit those as being evidence of true ownership, dominion or control over the property, rather just this was the family home and that there were various contributions, including made by the defendant's parents to a variety of expenses that didn't rise to the level of dominion or control. If the court has further questions about the factual findings underlying the forfeiture, I'm happy to address them. Otherwise, I'll move to address the government's cross appeal as to the district court's no-sale order. The district court's no-sale order contravenes both state property law, which determines what rights the government takes title to in an ancillary forfeiture, and the federal statutory mandate that a property that has been forfeited making your argument right to the conclusion. If we assume, just for purposes of argument, that we agreed with your cross appeal, tell us exactly what would happen on remand. Either this court could remand with instructions or the court could modify the district court's order itself to remove the no-sale condition, the life estate condition. Then what would happen is the United States would take the property to a forfeiture sale. Remand with instructions. It would detail what you're saying the court would otherwise do itself. Yes, Your Honor. We would then take the property to a forfeiture sale, at which point it would be sold for whatever amount of money we obtained for it, and then the full one-third interest that the district court found for Ms. Alicieva would be given to her from the net proceeds of that sale. And that's because the government hasn't contested her one-third ownership, despite, candidly it seems to me, you'd have a very good argument for contesting her one-third ownership to begin with. We think so, too, Your Honor. But in this case, the interest, the law is so complicated and the government's interests were so clear as to the rest of it that we simply chose not to contest the district court's order on that. It is partly what makes the whole complicated situation. Like, you simultaneously concede this woman has an ownership stake, but then argue that you can take the property and kick her out of it and sell it. Yes, Your Honor. I see the tension. However, that's the case in any forfeiture case in which the government forfeits less than 100 percent of the interest. Here, we didn't even ask for full forfeiture of Ms. Alicieva's interest. We asked for 50 percent. So, even if we had obtained what we had asked for under the law that we think we're entitled to, there would have still been a question. She would have, at that point, had one-sixth of the property's value still in her name. So, what about the argument that opposing counsel makes on one of the other properties where the court did credit her with $235,000 that that's all she gets out of it as opposed to, and I assume she has a one-third interest in that property? I have to check, Your Honor. There are some properties in which she is a half owner where the defendants took themselves out of the title ownership entirely. So, I'm not positive that that one is... Why is she limited to the $235,000 if she has a one-third or one-half interest, for instance? Wouldn't she be entitled to that interest of the sale if it exceeds $235,000? No, Your Honor, and I think the reason is because the difference in justifications for the forfeiture. So, the 11037 69th Avenue property was forfeited as a source of influence. The other four real properties were forfeited as proceeds of the RICO conspiracy. So, by giving her her $235,000 back, the district court is crediting her for the portion of the property that was not purchased as the result of the RICO proceeds. However, the rest of it was all purchased with proceeds from the counterfeiting operation, and therefore, it's not that the district court... Assuming there's a surplus, how do we divvy the surplus? Right. Or whatever percentage ownership she has in that particular property. And I think the answer is that, again, Ms. Vangieva did not exercise dominion or control over those properties at all. She was, again, a nominal owner only for $10 interest. And so, essentially, I think it was an act of grace. That doesn't matter. Say that my friend and I buy a vacation house in somewhere. I don't know, whatever. And we buy it for $100, and we each put up $50, and we sell it. But it turns out we bought in Florida right before Disney World opened, and 40 years later, we sell it for $10 million, and I've never been there. I'm a 50% owner. I get 50% of the sales price, right? Yes, Your Honor, except that this wasn't... The $235,000 was not contributed as part of the purchase of it. It was to pay off the mortgages. And so, the differences between how she took title to it in the first instance, which was through one of these $10 quick claim deeds again, versus the contribution that she then made to paying off the mortgage. So, the district court credited her back the payment that she made... A record owner before she put in the $235,000. That is correct, Your Honor. A record owner for no meaningful consideration. Exactly. Probably a lot of this will be sorted out on remand, I would think. But the... If the court has concerns about it, it can certainly remand with instructions to adjudicate this issue, which I do not believe was raised... I think a lot of this will be sorted. What we have before us now is simply the question of whether the grant of the life estate, what effect that had. And the problem is, you know, that's the claim of error. A lot of this can be sorted out later. But by granting the petitioner a life estate, it just froze things in place. I mean, you were somebody with a one-third interest or whatever, or the one-third interest is depriving the government with its two-thirds interest of its ability to do anything. You can't take possession of the property, can't sell it, can't occupy it. You know, there's nothing you can do. Your interest is simply reduced. It's made nootatory. It's reduced to zero for the period of the life estate, which is a very odd kind of situation. And the equity is not really... They say, well, it's only equitable to let her live the life estate and to let the kids live on the property. And I can understand that in some abstract sense. But the equity of it is that somebody is living on the property which is funded by the proceeds of a counterfeit conspiracy. And then in order to achieve that particular result, the government is deprived of any use of its interest in the property whatsoever. And that is particularly unfortunate because the sale, the equity is judged by what the sale will produce. And the sale will allow her one-third interest to be monetarily satisfied. I didn't understand that life estate order at all. That's exactly our position, Your Honor. And the one point I would make on the equities is the federal forfeiture statutes don't include an equitable analysis as to whether property is forfeitable or whether or not a sale can be directed. The equity analysis is exclusively a matter of New York state law actions for partition and sale. And even in that context, it's not the kind of free-ranging equitable analysis that the petitioner argues in her specific, and I think can be fairly characterized as a stopple, whether or not there's some other existing agreement or court order that would be implicated by the action for partition and sale. But even if there were some equitable exception into the forfeiture statutes, and when you're right to point out there's not, the question is which way does the equity cut? Does it cut in favor of depriving us where there's no evidence of a joint tenancy? Does it cut in favor of depriving the party with the larger interest in the property completely of any utilization of that interest because of a smaller interest in the property? I mean, that can't be equity. I completely agree, Your Honor. And I think in this case, particularly where the government has chosen not to contest any of the residual rights that it might have taken title to by forfeiting Edward's portion of the tenancy by the entirety, this case is quite simply resolved with sale and proportional distribution of the proceeds. If the court has no further questions for me, thank you, Your Honors. All right. Thank you. Counselor, you have some time for rebuttal. Okay, Your Honors. I would like to address the property of 110-3769 Avenue. Again, this property was purchased in 2003, which predates the conspiracy. This is very important. And Ilana is claiming one-third interest, which was improperly denied. Irina Alishaeva, she was granted one-third with the life estate, which the counsel addressed already. And one-third was forfeited. How is that possibly consistent with New York law or the federal forfeiture statute? Because this property is, when the counsel saying that Ilana is a nominal owner, it's not accurate. She resided at this property for seven years. Since the beginning, it was purchased. She contributed into the purchase price. Sorry, I was unclear. I mean the life estate. And I recognize that you don't think we get there because you think there's a threshold thing. But let's say we get to the district court's life estate and to the government's appeal. On what basis can the district court grant this life estate under either New York law or the federal forfeiture statute? First of all, Irina holds title as tenants by the entirety, which is undivided interest. Second, this property is a residence for three generations of people. Eight people lived in this house, including elderly parents, Irina with her husband, and their four children. They've been living there for 20 years. I agree there are very strong equities for why you might do this. Legally speaking, as a matter of New York property law or the federal forfeiture statute, how can you do that if you're the district court judge? The district court made this ruling because this is a primary residence of a petitioner for the Ilana, I mean for the Irina, I'm sorry. I think the underlying question, though, is you have three interests here, a third, a third, and a third. And so the court allowed the owner one of the one-third interests to get extra real estate rights, a life estate. So I think the question Judge Hytens is asking is what's the authority under New York law to do that? There were a lot of cases cited in our petition, and the court, the district court itself, because this issue was, there was a motion to reconsider filed by the government, and the court again reinstated in his decision and cited a lot of cases for why the life estate should be granted to that point. And I just wanted to address also when the government claims that Ilana is a nominal owner, it's not, again, it's not correct statement. She contributed towards the purchase price. It was not just $10 that the government claims. That property was purchased, again, in 20 years ago for the down payment only. Where she put up the $235 later? $235 relates to different property, 102-02. And when counsel said it was mortgage, no, it was not the mortgage. $235 was paid towards the down payment on 102-02 property. It's a lot of facts that, a lot of properties, I understand that it's... Let me ask you, the property where she put up the $235 and she gets the $235 back, I know you've argued she gets an extra $140 and that there ought to be some sort of percentage calculation made on the sales price if there's a sale. But if we didn't agree with that, does the petition on her behalf ask that she get interest on the $235,000 since the date of contribution or does it not address that? The petition claims that she's established that she's 81% owner and the remaining 19% should be subject to a government's lien. If the court decides to acknowledge only $235,000 towards the equity, then she's still majority 51% owner and the remaining should be subject to the government's lien. That's her position. She cannot be just given $235,000 and all 14 years of her ownership be disregarded and the price appreciation of the property. This is a real estate market. That's why I ask whether, I mean, if they in fact treat this as some sort of a loan, it in effect becomes a non-interest-bearing loan for those years. So that's why I ask if the petition asking the alternative, if it is treated that way, whether she would be entitled to any interest. She is entitled, obviously, because who paid the mortgage all these years? It was not the government who paid the mortgage. It's not just $235,000 that she initially contributed. She was the owner, the proper title owner for 14 years. And now the court in memorandum opinion says, yes, we acknowledge the $235,000 contribution. It's legitimate. However, the property is forfeited to the government. That's not right. And it's a clear error in the court's decision. But also for the $110,000-$37,000 property, Irina gets one-third life estate. But Ilana's ownership was established back in 2003. Even the council now acknowledged that the government interest only started from 2006. So she has clearly pre-existing interest in this property. And this property, again, it was purchased 20 years ago. And the down payment itself was only $100,000. And the mortgage was $750,000. So the value that she contributed towards the down payment, there are multiple receipts that she provided. She put this property on her income tax returns as her residence. It was on her driver's license. And she resided there for seven years. So that property- All right. Thank you very much, counsel. We appreciate it. We've given you a little extra time and we appreciate your argument. Thank you, your honors. Thank you.
judges: J. Harvie Wilkinson III, G. Steven Agee, Toby J. Heytens